UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DONNELL MURRAY, | ) | |
| _Plaintiff_, | ) | |
| | ) | |
| _vs._ | ) | 1:12-cv-01012-JMS-DML |
| | ) | |
| GOLDEN RULE INS. CO./UNITED HEALTH | ) | |
| CORP., | ) | |
| _Defendant._ | ) | |

## ORDER

Presently pending before the Court is Defendant Golden Rule Ins. Co./UnitedHealthcare

Corp.'s ("Golden Rule") Motion for Summary Judgment. [Filing No. 34.][1]

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judg-

ment as a matter of law. _See_ Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes

clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must sup-

port the asserted fact by citing to particular parts of the record, including depositions, documents,

or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the

materials cited do not establish the absence or presence of a genuine dispute or that the adverse

party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affi-

davits or declarations must be made on personal knowledge, set out facts that would be admissi-

---

[1] Plaintiff named "Golden Rule Ins. Co./United Health Corp." as a defendant, but UnitedHealthcare states in its brief in support of its Motion for Summary Judgment that this is not a legal entity and that "[a]t all times relevant hereto, Plaintiff was employed by UnitedHealthcare Services, Inc." [Filing No. 35 at 1.] Plaintiff does not dispute this contention in her response. The Court will refer to Defendant as "Golden Rule" in any event, because this is the UnitedHealthcare Services, Inc. entity where Plaintiff Donnell Murray worked.

ble in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record:

Golden Rule is part of the UnitedHealth Group family of companies, and "specializes in issuing individual and family health insurance policies to individuals who are self-employed, unemployed, or do not receive insurance benefits through their employer." [Filing No. 35 at 3-4.] On November 10, 1986, Plaintiff Donnell Murray began working for Golden Rule as a claims trainee. [Filing No. 36-1 at 5-6.] After a six-week training period, Ms. Murray became a claims adjuster. [Filing No. 36-1 at 6.] As a claims adjuster, she reviewed claims in order to determine whether they were covered under the terms of the policy at issue. [Filing No. 36-1 at 6.] This required Ms. Murray to know anatomy, medical terminology, and medical coding. [Filing No. 36-1 at 6.] She became a Senior Claims Auditor in 2001. [Filing No. 36-1 at 9.] In this position, Ms. Murray's original supervisor was Janice Koors. [Filing No. 36-1 at 10.] After a few years, her supervisor became Nancy Novitski. [Filing No. 36-1 at 10.]

Ms. Murray currently holds this same position at Golden Rule, and Ms. Novitski is still her supervisor. [Filing No. 36-1 at 10.] Her job duties include auditing case management files and medical case review files, auditing individual claims within her authority, and working on special projects as her supervisor requires. [Filing No. 36-1 at 10.] She has investigated injury related claims, obtained accident details, and verified insurance, third party and liability coverage. [Filing No. 40-3 at 1.] While Ms. Murray might flag coverage issues such as whether a certain procedure was medically necessary, she would not actually make that determination but rather would send it back to the appropriate department for analysis. [Filing No. 36-1 at 11.] She

has also investigated and responded to Department of Insurance complaints, and developed knowledge of how to handle grievances and complaints. [Filing No. 40-3 at 1.]

Ms. Murray holds a four-year degree in elementary education, and obtained her Master's Degree in Business Administration from Indiana Wesleyan University, with a concentration in Human Resources, in December 2011.[2] [Filing No. 36-1 at 4.] Ms. Murray also owns a catering business, [Filing No. 36-1 at 15], and held a part-time seasonal testing position with McGraw-Hill from 2001 to 2009, in which she trained thirty-one evaluators in a team leader/trainer/supervisor role, [Filing No. 36-1 at 14].

### A. Application for Promotion to Manager of Recovery/Resolution

Margaret Gaskey is Director of Investigations for Golden Rule, and manages the Medical History Review, Catastrophic Case Management, and Medical Management units. [Filing No. 36-2 at 2.] The Catastrophic Case Management unit "performs analyses regarding certain claims to determine whether the treatment [an insured received] is medically necessary and/or experimental/investigational and in turn, whether the claim is covered under the plan of insurance." [Filing No. 36-2 at 2.] In late May or early June 2011, Ms. Gaskey posted a job opening in Catastrophic Case Management for the position of Manager of Recovery/Resolution. [Filing No. 36-2 at 3.] The Manager of Recovery/Resolution "is responsible for the daily workload management for the unit, including review of online work queues and providing direction to staff regarding specific work to be screened[,]" including "reviewing, assigning, and distributing open cases, coaching and directing staff regarding specific cases, and approval of staff decisions on files[,]"

---

[2] Ms. Murray disputes Golden Rule's statement that "Plaintiff had not obtained her MBA when she interviewed for the two positions at issue in this lawsuit" by stating that she "had not *completed* her MBA, but was only a matter of approximately six months away from doing so." [Filing No. 39 at 8 (emphasis in original).] This is not a dispute at all, as "completing" her Master's Degree and "obtaining" it are the same thing.

and "handling complaints and appeals." [Filing No. 36-2 at 3.] The position requires the candidate to have an undergraduate degree or equivalent work experience. [Filing No. 36-2 at 3.]

Ms. Murray completed an application for the Manager of Recovery/Resolution position, and submitted it online through Golden Rule's intranet site. [Filing No. 36-2 at 3.] Ms. Gaskey selected Ms. Murray, along with five other candidates, for an interview. [Filing No. 36-2 at 3.] Three of the candidates selected already worked in the Catastrophic Case Management unit – Crystal Dillon, Malinda Zumer, and Holly Fields. [Filing No. 36-2 at 3.] Another candidate – Lisa Wheeler – worked in the Medical History Review unit. [Filing No. 36-2 at 3.] Ms. Murray and the last candidate – her supervisor, Nancy Novitski – worked in the Claims Audit unit. [Filing No. 36-2 at 3.]

Ms. Gaskey conducted the interviews, and each candidate's interview lasted about an hour. [Filing No. 36-2 at 4.] Ms. Gaskey believed that Ms. Murray did not perform well during her interview: she "struggled to come up with appropriate responses to [her] questions[;]… could not articulate why she was the best candidate for the job[;]…was unable to provide relevant examples of experience at Golden Rule responding to customer service issues[, instead providing] examples from her catering business, employment experiences dating prior to 1986, or experiences in her pursuit of a Master's Degree[; and] failed to provide examples of how she had effectively managed a conflict situation or dispute with a customer in her years of experience at Golden Rule."[3] [Filing No. 36-2 at 4.] While Ms. Murray has investigated injury related

_____

[3] Ms. Murray disputes that she was unable to provide relevant examples of experience responding to customer service issues during her interview, but does not cite to any evidence to support her contention. [Filing No. 39 at 8.] As such, the Court will take Golden Rule's stated fact (that she was not able to provide example of experience responding to customer service issues) as true. *See* Local Rule 56-1(f) (facts claimed and supported by admissible evidence by the movant are admitted except if the non-movant "specifically controverts the facts in that party's 'Statement of Material Facts in Dispute' with admissible evidence….").

claims, obtained accident details, and verified insurance, third party, and liability coverage while working at Golden Rule, [Filing No. 40-3 at 1], Ms. Gaskey concluded that Ms. Murray had no supervisory experience during her tenure there, [Filing No. 36-2 at 4]. Ms. Gaskey deemed Ms. Murray "the least qualified" of the candidates she interviewed. [Filing No. 36-2 at 4.]

Ms. Gaskey ultimately selected Lisa Wheeler, a Medical History Review Lead Specialist, for the Manager of Recovery/Resolution position. [Filing No. 36-2 at 4.] Ms. Wheeler performed very well during the interview, and had prior experience at Golden Rule in the Catastrophic Case Management and Special Investigations units. [Filing No. 36-2 at 4.] She also had prior relevant supervisory experience at Golden Rule as a "team lead." [Filing No. 36-2 at 4.] Ms. Wheeler does not have an undergraduate degree, but Ms. Gaskey determined that she had the relevant work experience to meet the job requirements. [Filing No. 36-2 at 4.] Other than Ms. Murray, the remaining unsuccessful candidates are all Caucasian. [Filing No. 36-2 at 5.]

**B. Application for Promotion to Senior Regulatory Affairs Analyst**

Sara Amos is the Associate Director of Regulatory Affairs for Golden Rule, in its Indianapolis office. [Filing No. 36-3 at 2.] Ms. Amos was Ms. Murray's supervisor for a few months in 1990, when Ms. Murray worked as a claims adjuster. [Filing No. 36-3 at 2.] In June 2011, Ms. Amos posted an opening for the position of Senior Regulatory Affairs Analyst on Golden Rule's intranet site. [Filing No. 36-3 at 2.] The primary function of the Senior Regulatory Affairs Analyst was to "enhance relationships with state regulators and interface with business units regarding regulatory affairs." [Filing No. 36-3 at 2-3.] The Senior Regulatory Affairs Analyst "respond[s] to inquiries, requests, and actions by state regulators, including complaints and requests for assistance," and "acts as a liaison between [Golden Rule] and various Departments of Insurance." [Filing No. 36-3 at 3.]

Ms. Murray applied for the position of Senior Regulatory Affairs Analyst, and Ms. Amos selected her for an interview along with three other candidates. [Filing No. 36-3 at 3.] Two of the candidates – Malinda Zumer and Crystal Dillon – had worked under Ms. Amos's direct supervision as Case Management Analysts directly before her promotion to Associate Director of Regulatory Affairs. [Filing No. 36-3 at 3.] Ms. Zumer had worked for Ms. Amos for ten years, and Ms. Dillon for five years. [Filing No. 36-3 at 3.] The third candidate other than Ms. Murray, Jeremy Arnold, worked in Golden Rule's financial area. [Filing No. 36-3 at 3.]

Ms. Amos interviewed all four candidates and ultimately selected Ms. Dillon for the position. [Filing No. 36-3 at 3.] She based her decision on directly supervising Ms. Dillon for five years and having "the opportunity to continually observe and critique the details of her work product over an extended period of time, which [she] rate[s] as very good." [Filing No. 36-3 at 3.] Ms. Amos found Ms. Dillon to be "focused [and] determined," to have "excellent writing, interpersonal, and organizational skills," and to "always timely [meet] deadlines." [Filing No. 36-3 at 3.] Ms. Dillon has a Bachelor's Degree in Business Administration with a concentration in Management and Marketing. [Filing No. 36-3 at 3.]

Ms. Murray has investigated and responded to Department of Insurance complaints during her tenure at Golden Rule. [Filing No. 40-3 at 1.] Ms. Amos has known Ms. Murray since she became employed at Golden Rule, and has known her to have "a quiet personality that lends itself to the perception that she is being cold or short." [Filing No. 36-3 at 1-3.] Conversely, she finds Ms. Dillon to have "stronger interpersonal skills," and since "excellent interpersonal skills are vital to the role of Senior Regulatory Affairs Analyst," she determined Ms. Dillon was the strongest candidate. [Filing No. 36-3 at 3-4.] Other than Ms. Murray, the unsuccessful candidates are all Caucasian. [Filing No. 36-3 at 4.]

### C.  Ms. Murray's EEOC Charges

On November 21, 2011, Ms. Murray filed a Charge of Discrimination with the Indiana Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") against Golden Rule (the "EEOC Charge").  [Filing No. 36-4.]  Ms. Murray claimed discrimination based on her race, age, and religion and stated:

> On June 22, 2011, I received notice that I was no longer being considered for the position of Manager Recovery/Resolution.  On July 20, 2011, I received notice that I was no longer being considered for the position of Senior Regulatory [Affairs] Analyst.  Both of these positions were filled by White employees under 40 years of age, with less experience and less education than I.  I wear only dresses or skirts because of my religion.  During one of my interviews, religion was the topic of discussion, which I thought was strange.  I spoke with Human Resources about my concerns, with no results.  I contacted the Equal Employment Office (EEO) within the company and spoke with Human Resources Specialist Lucille Meredith, with no results.  I believe I have been discriminated against because of my age, 51, in violation of the Age Discrimination in Employment Act of 1967, as amended; and, in violation of Title VII of the Civil Rights Act of 1964, as amended [("Title VII")].

[Filing No. 36-4 at 2.]  Ms. Murray lists the dates of discrimination to be from June 22, 2011 to July 20, 2011.  [Filing No. 36-4 at 2.]

On January 10, 2012, Ms. Murray filed an Amended Charge of Discrimination ("Amended EEOC Charge") in which she added that she is "a Christian (Apostolic/Pentecostal) Black female," and believed she was discriminated against because of her race and religion in violation of Title VII.  [Filing No. 36-5 at 2.]

On April 26, 2012, the EEOC dismissed Ms. Murray's EEOC Charge and Amended EEOC Charge, stating that it was "unable to conclude that the information obtained establishes violations of the statutes."  [Filing No. 36-1 at 30.]

**D.  Ms. Murray's Lawsuit**

On July 24, 2012, Ms. Murray filed a *pro se* Complaint against Golden Rule.  [Filing No. 1.]  In the Complaint, she alleges that Golden Rule discriminated against her and retaliated against her in violation of Title VII and 42 U.S.C. § 1981 based on her race and national origin.  [Filing No. 1 at 4-5.]  Ms. Murray only mentions her applications for the positions of Manager Recovery/Resolution and Senior Regulatory Affairs Analyst in the Complaint.  [Filing No. 1 at 2-3.]

### III.
### DISCUSSION

**A.  The Scope of Ms. Murray's Claims**

*1.  Type of Discrimination*

At the outset, the Court notes some discrepancies between the types of discrimination Ms. Murray noted in her EEOC Charge and Amended EEOC Charge, the types asserted in her Complaint, and the types discussed by her in response to Golden Rule's Motion for Summary Judgment.  Specifically, in her EEOC Charge and her Amended EEOC Charge she checked boxes for discrimination based on race, religion, and age.  [Filing No. 36-4 at 2; Filing No. 36-5 at 2.]  In her Complaint, Ms. Murray alleges only "discrimination on the basis of race and national origin."  [Filing No. 1 at 1.]  In her response brief opposing summary judgment, Ms. Murray concedes that her national origin discrimination claim "is misplaced in this action," and abandons it.  [Filing No. 39 at 19.]  Accordingly, Golden Rule is entitled to summary judgment on her national origin discrimination claims.

Ms. Murray does not allege age discrimination in her Complaint.  However, in opposition to the Motion for Summary Judgment she asserts that Golden Rule filled various positions she applied for with younger applicants.  [*See, e.g.*, Filing No. 39 at 11 (Manager Appeals position

given to "David Wichrowski, a younger white male"); Filing No. 39 at 12 (arguing that "[i]t is not surprising…that Ms. Novitski was passed over given their relative ages – Novitski and [Ms. Murray] both being notably older than [Ms.] Wheeler – and [Ms. Murray's] allegation that [Golden Rule] has also engaged in discrimination on the basis of age").] Because Ms. Murray does not allege age discrimination in her Complaint, however, the Court finds that she has not pursued a claim for age discrimination.

Finally, Ms. Murray also does not allege discrimination based on her religion in her Complaint. She identifies herself as "Christian (Apostolic/Pentecostal)" in her Amended EEOC Charge and states "I wear only dresses or skirts because of my religion[,]" and "[d]uring one of my interviews, religion was the topic of discussion, which I thought was strange." [Filing No. 36-5 at 2.] But she does not mention her religion, or set forth any allegations relating to religious discrimination, anywhere in her Complaint, or in her briefs in opposition to the Motion for Summary Judgment.[4] She has not pursued a claim for religious discrimination.

In short, based on her EEOC Charge, her Amended EEOC Charge, her Complaint, and her response to Golden Rule's Motion for Summary Judgment, Ms. Murray has only properly pursued claims for discrimination based on race. The Court will disregard any references to discrimination based on age, religion, or national origin.

## 2. *Number of Denied Promotions*

Ms. Murray cites to numerous positions she contends she applied for and was qualified for, and argues that Golden Rule's failure to promote her to those positions constituted discrimi-

---

[4] Ms. Murray argues in her response brief that she "is a member of more than one protected class: she is a black woman who belongs to a protected religious group." [Filing No. 39 at 2.] But she does not mention in her brief what her religion is, or develop how Golden Rule allegedly discriminated against her because of that religion. Thus, she has waived any claim of that nature. *See Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument").

nation and/or retaliation. [Filing No. 39 at 10-17.] In addition to the Manager Recovery/Resolution and Senior Regulatory Affairs Analyst positions she references in her EEOC Charge, her Amended EEOC Charge, and her Complaint, she argues that Golden Rule discriminated against her because of her race for failing to promote her to the specific positions of: (1) Manager Appeals; (2) Claims Manager; (3) Claims Supervisor; (4) Senior Business Analyst; (5) Business Analyst Consultant; and (6) Claims Business Process Consultant. [Filing No. 39 at 10-15.] She mentions additional positions in passing, claiming that she "applied for at least thirty-five job openings within [Golden Rule's] organization over the scope of several years and was not selected for a single one." [Filing No. 39 at 10.]

Golden Rule argues that Ms. Murray's claims based on positions other than Manager of Recovery/Resolution and Senior Regulatory Affairs Analyst fail because she did not cite to those positions in her EEOC Charge or her Amended EEOC Charge so has not exhausted her administrative remedies under Title VII for those positions, and also did not mention them in her Complaint or her deposition. [Filing No. 46 at 3-6.] Golden Rule also argues that Ms. Murray has not properly authenticated the documents that purportedly support her statements concerning those positions. [Filing No. 46 at 6-7.] Additionally, it contends that Ms. Murray's § 1981 claim based on these additional positions should be barred because she did not amend her Complaint to add claims relating to those additional positions. [Filing No. 46 at 4-5.]

Ms. Murray responds[5] that the Court should read her EEOC Charge and Amended EEOC Charge broadly, that she did not "learn the details" of the other alleged instances of discrimination until nearly two years after she filed her EEOC Charge and Amended EEOC Charge, that she alleged a continuous pattern of discrimination in her Complaint, and that she did not disclose

---

[5] Ms. Murray retained counsel before Golden Rule moved for summary judgment, so was no longer proceeding *pro se* when she responded to the motion.

the incidents in her deposition because she was not aware of them. [Filing No. 48 at 1-4.] She also argues that the documents supporting her claims are authenticated because they were produced by Golden Rule in response to interrogatories and requests for production. [Filing No. 48 at 4-5.]

Golden Rule asserts that Ms. Murray cannot credibly argue that she only learned of the additional alleged instances of discrimination through discovery because she applied for the positions and knew that she had not received them. [Filing No. 52 at 2-3.]

A plaintiff cannot challenge adverse employment actions in court under Title VII that she did not include in her EEOC charge. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *see also Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010) ("[G]enerally, Title VII claims that were not included in an EEO charge are barred"). Instead, a plaintiff may only litigate claims that were not included in an EEOC charge if the underlying events are reasonably related to the charges in the EEOC complaint. *Lloyd*, 552 F.3d at 602.

In the context of employment discrimination specifically, the Seventh Circuit has held that a complaint may only include a claim not brought in an EEOC charge if the plaintiff shows that: (1) the claim in the complaint is "like or reasonably related" to the allegations in the EEOC charge; and (2) the claim in the complaint was expected to grow out of an EEOC investigation of the charge. *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995). When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are only reasonably related if the allegations in the complaint can reasonably be inferred from the facts alleged in the charge. *Id.* To be reasonably related, the charge must describe the same conduct and implicate the same individuals. *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994).

While the incidents relating to the other positions Ms. Murray applied for could be viewed as the same type of conduct, it is a stretch to consider them "the same conduct." Moreover, they do not necessarily implicate the same individuals. Indeed, even the Manager of Recovery/Resolution and Senior Regulatory Affairs Analyst positions involved different decisionmakers. Ms. Murray has not provided any information from which the Court could conclude that denial of the other promotions is reasonably related to the denial of the Manager of Recovery/Resolution and Senior Regulatory Affairs Analyst promotions. *See, e.g.*, *Troutt v. City of Lawrence*, 2008 WL 3287518, *7 (S.D. Ind. 2008) ("Employment decisions such as termination, failure to promote, denial of transfer, or refusal to hire are each discrete acts that occur when the discriminatory decision is made, and they are actionable only if the victim files a charge with the EEOC"); *Fortenberry v. Board of School Trustees*, 149 F.Supp.2d 542, 553 (N.D. Ind. 2000) (rejecting plaintiff's attempt to base discrimination claim on non-promotions not listed in EEOC charge, and stating "the Plaintiff's EEOC charge contains a single, specific incident which she alleges was discriminatory. Nothing in her EEOC charge would let the EEOC know that she intended for it to investigate what she now believes to have been a seven-year pattern of discrimination [by defendant] in its promotion decisions. Nor does her charge as worded give the Defendants notice that they need to put on evidence to counter such a claim").

As for her § 1981 claim relating to the additional positions, while Ms. Murray was not required to exhaust administrative remedies, she was required to amend her Complaint to include those allegations. She refers generally to "bias related to…the absence of any promotion to higher paying positions in comparison to white origin employees [and]…for promotion to higher paying positions in comparison to white and non-Mexican origin employees," [Filing No. 1 at 3], but only specifically identifies the Manager of Recovery/Resolution and Senior Regulatory Af-

fairs Analyst positions in her Complaint.  Significantly, she did not identify any other specific

positions in her deposition.

A plaintiff "may not amend [her] complaint through arguments in [her] brief in opposi-

tion to a motion for summary judgment."  *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir.

2012).  This principle insures that the defendant receives the "fair notice" required by the federal

rules.  *Id.*  (defendant "had not received the fair notice required by the federal pleading rules"

where claims were raised for the first time in response to summary judgment motion); *see also*

*Aida Food & Liquor, Inc. v. City of Chicago*, 439 F.3d 397, 402 (7th Cir. 2006) ("[A] response

to summary judgment is hardly a timely filing in which to raise an issue"); *Chinn v. Cantrell*,

2006 WL 2927595, *4 (N.D. Ind. 2006) ("[a] claim raised for the first time in response to a mo-

tion for summary judgment is not properly before the court").  Ms. Murray's attempt to amend

her Complaint through reference to the additional positions in her opposition to the Motion for

Summary Judgment is prejudicial to Golden Rule, as it did not have the opportunity to conduct

discovery and prepare a defense relating to those claims.  Accordingly, the additional positions

will not be considered in connection with her § 1981 claim.[6]

Accordingly, Ms. Murray's claims in this litigation are limited to Golden Rule's failure to

promote her to the positions mentioned in her EEOC Charge, her Amended EEOC Charge, and

---

[6] Ms. Murray blames Golden Rule for her failure to identify any additional promotions she did
not receive due to alleged racial discrimination, arguing that Golden Rule did not adequately re-
spond to discovery requests for information relating to all jobs she applied for during her tenure
at Golden Rule.  [Filing No. 48 at 3-4.]  But certainly Ms. Murray was aware of the positions she
had applied for, and could have alleged claims relating to her denial of those promotions when
she filed her Complaint or – if for some reason she was not aware of those positions – by amend-
ing her Complaint thereafter when she received more complete discovery responses.  Additional-
ly, Ms. Murray's initial discovery requests were specifically directed to Ms. Gaskey and Ms.
Amos, [*see* Filing No. 18-1; Filing No. 18-2], suggesting that her claims were limited to the two
positions for which they were the decisionmakers.

her Complaint – the Manager of Recovery/Resolution and Senior Regulatory Affairs Analyst positions.

## B. Ms. Murray's Discrimination Claim

### 1. Circumstantial Evidence or Prima Facie Case

Ms. Murray brings her discrimination claim pursuant to Title VII and 42 U.S.C. § 1981, alleging that Golden Rule discriminated against her based on her race by failing to promote her to two positions for which she applied. Because discrimination claims under Title VII and § 1981 are "nearly identical, and [the parties] treat[] them identically," the Court will "apply the same analysis" to Ms. Murray's claims. *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1068 (7th Cir. 2012); *see McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) ("[A]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical") (citation and quotation marks omitted).

To overcome summary judgment on a Title VII or Section 1981 discrimination claim, Ms. Murray may either proceed under the direct method, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), or proceed under the indirect method by utilizing the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). As to her method of proof, Ms. Murray states "[a]dmittedly, Plaintiff cannot present direct evidence of discrimination. Nevertheless, Plaintiff can demonstrate a ''convincing mosaic' of circumstantial evidence' sufficient to put to a jury the question of whether intentional discrimination occurred." [Filing No. 39 at 10.] Reference to a "convincing mosaic" indicates that Ms. Murray is proceeding under the direct method, but she also refers to "establishing her prima facie case," [Filing No. 39 at 19.] In any event, the direct versus indirect method is a distinction without a difference in this case, as Ms. Murray's claims fail under either method.

A plaintiff can proceed under the direct method by presenting "circumstantial evidence that creates a 'convincing mosaic of discrimination' on the basis of race." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Sufficient circumstantial evidence typically falls into one of three categories:

> (1) [S]uspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; [or] (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Good v. Univ. of Chicago Medical Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (quoting *Darchak v. City of Chicago Board of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009)). "A plaintiff may survive a motion for summary judgment based only on circumstantial evidence under the direct method, but only if the circumstantial evidence presented points 'directly to a discriminatory reason for the employer's action.'" *Good*, 673 F.3d at 675 (quoting *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003)).

To survive summary judgment under the indirect method, Ms. Murray must first establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. Specifically, in a failure-to-promote context, she must show that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for the position; and (4) the employer granted the promotion to someone outside the protected group and not better qualified than the plaintiff. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008). Once the employee establishes a prima facie case, the burden then shifts to the employer to present a legitimate non-discriminatory reason for the decision not to promote. *Id.* If the employer

offers such an explanation, the burden then shifts back to the employee to show that the given reason was a mere pretext for unlawful discrimination.  *Id.*

The Seventh Circuit Court of Appeals has instructed that "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicant's competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) (internal quotations omitted); *see also Stone v. Ballard*, 526 Fed. Appx. 688, 692 (7th Cir. 2013) (declining to "second-guess [employer's] reasonable judgment" regarding hiring decision); *Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006).[7]

Essentially, the Court's inquiry under either the direct or indirect method – and even when analyzing pretext – is the same, and requires consideration of the specific positions and the candidates that ultimately received the promotions.  *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 313 (7th Cir. 2012) (noting Judge Wood's concurrence in *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012), and stating that "we would be better served at this time by 'collaps[ing] all these tests,' into a single, unified approach that distills the core issue at the heart of these cases:  whether 'a rational jury could conclude that the employer took that adverse action on account of [the employee's] protected class [or activity], not for any non-invidious reason'").

---

[7] The Seventh Circuit Court of Appeals in *Mlynczak* noted that the United States Supreme Court rejected the Eleventh Circuit Court of Appeal's requirement that differences in qualifications can only show pretext when "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." 442 F.3d at 1060 (discussing *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)).  The *Mlynczak* court stated "[w]e see nothing in *Ash*…that requires reconsideration of *Millbrook*'s approach to qualifications evidence….Our *Millbrook* standard is essentially the same as the last of these [alternative approaches suggested by the Supreme Court in *Ash*], and thus, as we read *Ash*, is consistent with the law." *Mlynczak*, 442 F.3d at 1060.

Golden Rule argues that Ms. Murray has not presented any direct evidence of discrimination, and that she cannot establish the fourth element of a prima facie claim for discrimination based on failure to promote, because she cannot present evidence which demonstrates that the candidates ultimately selected for the positions for which she applied were similarly or less qualified than her for those positions. [Filing No. 35 at 11-13.] The Court will consider each position in turn.

### i. Manager of Recovery/Resolution Position

Golden Rule argues that Ms. Wheeler, the individual ultimately selected for the Manager of Recovery/Resolution position, was more qualified than Ms. Murray because, unlike Ms. Murray, she had worked in the Catastrophic Case Management and Special Investigations units, and in the Medical History Review unit as a Medical History Review Lead Specialist. [Filing No. 35 at 13.] Additionally, Golden Rule argues that unlike Ms. Murray, Ms. Wheeler had relevant supervisory experience as a "team lead" with Golden Rule. [Filing No. 35 at 13.] Golden Rule argues that, in contrast, Ms. Murray's only supervisory experience was from a part-time seasonal job outside of the insurance industry. [Filing No. 35 at 13.] Golden Rule also argues that while Ms. Wheeler did not have an undergraduate degree, her work experience was relevant for the position and Ms. Murray "did not have the quantity or quality of work experience relevant to the position as Ms. Wheeler had." [Filing No. 35 at 13.] Golden Rule notes that Ms. Murray's supervisor, Ms. Novitski, also was not chosen for the Manager of Recovery/Resolution position, and that Ms. Murray struggled during the interview. [Filing No. 35 at 14.]

Ms. Murray argues that she was more qualified than Ms. Wheeler because: (1) Ms. Wheeler "has no post-secondary education, and industry experience dating back only to 1993, seven years fewer than [Ms. Murray];" and (2) Ms. Wheeler's resume does not reflect superviso-

- 18 -

ry or management experience. [Filing No. 39 at 11-12.] Ms. Murray also argues that Ms. Novitski may have been passed over for the position because of her age, as Ms. Murray was. [Filing No. 39 at 12.] She argues that, at the least, she is "as qualified" as Ms. Wheeler. [Filing No. 39 at 12.]

The Manager of Recovery/Resolution position required an individual with an undergraduate degree or relevant experience, and was to be responsible for managing the daily workload management for the Catastrophic Case Management unit. [Filing No. 36-2 at 3.] The job also entailed "reviewing, assigning, and distributing open cases, coaching and directing staff regarding specific cases, and approval of staff decisions on files," and "handling complaints and appeals." [Filing No. 36-2 at 3.] Ms. Murray's argument regarding why she was more qualified than Ms. Wheeler to handle the job boils down to three points: (1) Ms. Wheeler had no post-secondary education; (2) Ms. Wheeler had seven fewer years of industry experience than she did; and (3) Ms. Wheeler's resume does not reflect supervisory or management experience and Golden Rule has conceded that Ms. Murray has satisfactory supervisory, "team lead" or management experience for other positions. [Filing No. 39 at 11-12.] These points do not support a conclusion that Ms. Wheeler was similarly or less qualified than Ms. Murray for the Manager of Recovery/Resolution position.

While it is true that Ms. Wheeler does not have an undergraduate degree and Ms. Murray does, that fact alone is not enough to show that Ms. Wheeler was less qualified than Ms. Murray. The position required an undergraduate degree *or* equivalent work experience. Ms. Wheeler had already worked in the Catastrophic Case Management and Special Investigations units, while Ms. Murray had not. Additionally, while Ms. Murray had worked in the insurance industry longer than Ms. Wheeler, Ms. Wheeler's work in the industry was more relevant to the Manager

of Recovery/Resolution position. Ms. Murray's positions did not involve any supervisory roles. By contrast, Ms. Wheeler had been a "team lead" for Golden Rule. [Filing No. 36-2 at 4.] Ms. Wheeler had also worked in several different departments at Golden Rule, including in the Catastrophic Case Management unit, the unit which encompasses the Manager of Recovery/Resolution position. From the record evidence, the Court cannot conclude that Ms. Murray was more qualified than Ms. Wheeler for the Manager of Recovery/Resolution position.

The Court also cannot conclude that Ms. Murray was as qualified as Ms. Wheeler for the position. Ms. Murray lacked supervisory experience and direct experience in the Catastrophic Case Management unit – an area where Ms. Wheeler had already held a position. Additionally, Ms. Gaskey found that Ms. Murray "struggled to come up with appropriate responses" during the interview, and was the least qualified of the applicants interviewed. There is nothing improper with an employer basing promotion decision on subjective factors such as interview performance. *See Armstrong v. City of Milwaukee*, 204 Fed. Appx. 559, 563 (7th Cir. 2006) (employee who was denied promotion after performing poorly in interview could not demonstrate prima facie case of racial discrimination; court stated "[Plaintiff] does not explain how his 'objective' accomplishments exceed those of [the applicants who received the promotion]; his brief merely recites without elaboration what he deems to be his professional accomplishments over the past ten years….[W]e…have squarely rejected similar attacks on employers' use of 'subjective' criteria, and stated that nothing in Title VII prohibits employers from relying on such criteria when promoting individuals"); *Hall v. City of Chi.*, 52 Fed. Appx. 259, 263 (7th Cir. 2002) (stating in racial discrimination case based on failure to promote that "it is entirely reasonable for [employer] to base its promotion decisions on current interview performances") (emphasis omitted).

In sum, Ms. Murray has not presented direct or circumstantial evidence of racial discrimination or demonstrated a prima facie case in connection with Golden Rule's failure to promote her to Manager of Recovery/Resolution.

### ii.  Senior Regulatory Affairs Analyst Position

Golden Rule argues that Ms. Murray cannot show that Ms. Dillon – the successful candidate for the Senior Regulatory Affairs Analyst position – was similarly or less qualified than her because Ms. Amos was "intimately familiar with the details of Ms. Dillon's work and her qualifications for this role, including her strong focus, determination, strong writing, interpersonal and organizational skills and her adherence to deadlines," Ms. Dillon had a Bachelor's Degree in Business Administration with a concentration in Management and Marketing, and Ms. Dillon had "stronger interpersonal skills" than Ms. Murray which was "vital" for the position.  [Filing No. 35 at 14-15.]

Ms. Murray argues that she was more qualified than Ms. Dillon for the position because she had worked an additional fifteen years in the industry, she had "nearly completed" her Master's Degree in business administration when she interviewed for the position, her concentration in human resources was relevant experience for the position, and interpersonal skills were not identified as required or preferred for the position so Golden Rule cannot rely on Ms. Dillon's interpersonal skills to justify its decision.  [Filing No. 39 at 13.]

The Senior Regulatory Affairs Analyst position required an individual who could effectively interface with state regulators regarding regulatory issues.  [Filing No. 36-3 at 6.]  The position is responsible for "responding to inquiries, requests, and actions by state regulators, including complaints and requests for assistance," and is "[i]n essence…a liaison between [Golden Rule] and various Departments of Insurance."  [Filing No. 36-3 at 3.]  Ms. Amos selected Ms.

Dillon based on her familiarity with Ms. Dillon over the previous five years, and her direct supervision of Ms. Dillon during part of that time. [Filing No. 36-3 at 3.] In contrast, Ms. Amos had only directly worked with Ms. Murray for a few months in approximately 1990. [Filing No. 36-3 at 2.] Ms. Amos knew Ms. Murray to have a quiet personality that "lends itself to the perception that she is being cold or short." [Filing No. 36-3 at 3.] Conversely, she believed that Ms. Dillon "clearly has stronger interpersonal skills." [Filing No. 36-3 at 3-4.] Because interpersonal skills are "vital" to the Senior Regulatory Affairs Analyst position, Ms. Amos selected Ms. Dillon. [Filing No. 36-3 at 3-4.]

Similar to Ms. Gaskey basing her selection of Ms. Wheeler in part on Ms. Murray's performance in the interview, there is nothing improper about Ms. Amos basing her selection of Ms. Dillon on her personal interactions with her and her assessment of Ms. Dillon's interpersonal skills. These are subjective criteria, but an employer is entitled to base promotion decisions on subjective criteria. *See, e.g.*, *Armstrong*, 204 Fed. Appx. at 563; *Hall*, 52 Fed. Appx. at 263.[8] Ms. Murray simply has not shown that she was more qualified than – or as qualified as – Ms.

---

[8] Ms. Murray argues that interpersonal skills "were not identified as required or preferred assets in the position posting," [Filing No. 39 at 13], but the job profile states that the function of the Senior Regulatory Affairs Analyst is to "maintain and enhance relationships with state regulators and interface with business…[and r]espond to inquiries, requests and actions by state regulators," [Filing No. 36-3 at 6]. This close interaction with state regulators would require sufficient interpersonal skills.

Dillon for the job and, as a result, has not put forth circumstantial evidence or demonstrated a prima facie case of racial discrimination based on the failure to hire her for the position.[9]

### 2. *Pretext*

Even if Ms. Murray could establish a prima facie case of racial discrimination under the indirect method, she has not presented evidence that would allow a trier of fact to conclude that Golden Rule's stated reasons for failing to promote her were a pretext for discrimination. To establish pretext, the employee must show either that the employer was motivated by a discriminatory reason or that the employer's proffered reason "is unworthy of credence." *Zaccagnini v. Chas. Levy Circulating Co., 338 F.3d 672, 676 (7th Cir. 2003)* (internal citations omitted). "[E]vidence that calls truthfulness into question precludes…summary judgment." *Id.* (internal citations omitted).

Ms. Murray argues that Golden Rule's reasons for failing to promote her are pretextual because she "has demonstrated from the undisputed material facts that the individuals hired for many jobs to which she applied were filled by less qualified (and generally younger) white individuals," her credentials are "leaps and bounds ahead of the chosen candidates," and in some instances Golden Rule did not even consider her. [Filing No. 39 at 19.]

---

[9] The Court rejects Ms. Murray's argument that if she was less qualified than Ms. Wheeler or Ms. Dillon, it was because she was previously denied promotions that "would have lifted her qualifications even further above those of [Ms.] Wheeler or [Ms.] Dillon." [Filing No. 39 at 18.] This is sheer speculation, and not supported by record evidence. The Court also notes that Ms. Murray's statement that "[b]lack employees have historically been held to low level service rather than having opportunities for promotion," [Filing No. 39 at 18], is not supported by citation to evidence and, accordingly, will be disregarded. *See* Fed. R. Civ. P. 5(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by…citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials….").

It is well-settled that an employer can make a mistake, or even act unfairly, while still not acting in a discriminatory fashion. As the Seventh Circuit Court of Appeals has explained, "we 'do not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination.'…'On the issue of pretext, our only concern is the honesty of the employer's explanation.'…And there is no indication in the record that [the employer] did not honestly believe [its actions were correct]." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001) (citations omitted); *see also* *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 718 (7th Cir. 1999) (in order to show pretext, it is insufficient for employee "to show that his employer fired him for incorrect or poorly considered reasons. He must establish that the employer did not honestly believe the reasons it gave for terminating him"); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006) (finding insufficient evidence of pretext and stating "it is not our role to determine the competency of or interfere in employment decisions simply where we believe an employer has made a poor choice. Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair").

In the context of a failure to promote, the plaintiff "must have credentials so superior to those of the person selected such that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question'" in order to show that the employer's reasons for denying the promotion were pretextual. *Dodge v. Lincoln Nat. Life Ins. Co.*, 2006 WL 1722363, *8 (N.D. Ind. 2006) (quoting *Millbrook*, 280 F.3d at 1180-81).

While Ms. Murray spends much time in her opposition to Golden Rule's summary judgment discussing how qualified she was for the Manager of Recovery/Resolution and Senior Reg-

ulatory Affairs Analyst positions, the Court has already held that she has not presented sufficient evidence demonstrating that she was more qualified – or even as qualified – as the individuals ultimately selected for those positions. This finding, as Ms. Murray points out, goes directly to pretext. [Filing No. 39 at 19 ("In this case, the prima facie case and pretext analysis are essentially one and the same").] Because she has not presented sufficient evidence showing that she was more qualified, or even as qualified, as the selected candidates, she also has not shown that Golden Rule's reason for not promoting her – that she was not as qualified as the selected candidates – is pretextual.

And even if those reasons were based on mistaken or incorrect conclusions, that would not be enough to show pretext. *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999) ("[T]he overall correctness or desirability of the reasons proffered is not relevant to the determination of pretext…Despite the plaintiff's contentions to the contrary, there is no evidence in the record to demonstrate that any of these reasons [including poor performance in an oral interview] are fallacious"); *Dodge*, 2006 WL 1722363 at *9 ("A court's role is to prevent unlawful employment practices, not to second-guess an employer's business decisions; a court 'must respect the employer's unfettered discretion to choose among qualified candidates'"). Ms. Murray must show that Golden Rule's reasons for deciding not to promote her were false, and she has done so.[10]

---

[10] Even if the Court were to consider the six additional positions that Ms. Murray mentions specifically, or the other positions she mentions generally, Ms. Murray has not provided sufficient detail regarding those jobs such that the Court could conclude that she has proven a prima facie case of discrimination. And, even if she had, discrimination claims based on those positions would similarly fail for lack of evidence of pretext. Similarly, even if the Court had not found that Ms. Murray failed to assert discrimination claims based on age or religion in her Complaint, she has likewise not presented direct evidence of age or religious discrimination, made out a prima facie case of age or religious discrimination under the indirect method, or shown pretext in connection with such claims.

Finally, glaringly absent from Ms. Murray's briefs is a discussion of any evidence showing Golden Rule's actions were motivated by discrimination. Golden Rule is entitled to judgment as a matter of law on Ms. Murray's Title VII and Section 1981 race discrimination claims.

### C. Ms. Murray's Retaliation Claim

While Ms. Murray appears to assert Title VII and § 1981 retaliation claims in her Complaint, [*see, e.g.*, Filing No. 1 at 4 ("Golden Rule's conduct subjected Murray to disparate treatment relative to compensation, terms, conditions, and privileges of employment and retaliation, in violation of Title VII, as amended [and § 1981]")], she did not respond to Golden Rule's arguments that: (1) her Title VII retaliation claim fails because she did not properly exhaust administrative remedies with the EEOC prior to filing this lawsuit; and (2) her § 1981 retaliation claim fails because she did not engage in any statutorily protected conduct until after she failed to receive the promotions, [Filing No. 35 at 25-26]. Accordingly, the Court finds that she has abandoned those claims. *See, e.g.*, *Hughes v. City of Indianapolis*, 2012 WL 1682032, *1 (S.D. Ind. 2012)* (summary judgment granted in favor of defendant where plaintiff failed to address arguments made by defendant "or otherwise present evidence to support her allegations"); *United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) ("unsupported and undeveloped arguments are waived"); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 n.2 (7th Cir. 1996) (plaintiff abandoned claim after failing to respond to defendant's arguments relating to claim in motion for summary judgment); *Marcavage v. City of Chicago*, 659 F.3d 626, 638 (7th Cir. 2011) (failure to respond to argument opposing party made on summary judgment constituted waiver of that argument).

In any event, Golden Rule is correct that Ms. Murray's retaliation claims fail as a matter of law. Ms. Murray did not include an allegation of retaliation in her EEOC Charge or her

Amended EEOC Charge, [*see* Filing No. 36-4; Filing No. 36-5], so her Title VII retaliation claim fails because she did not exhaust her administrative remedies. As for her § 1981 retaliation claim, Ms. Murray would need to prove that she engaged in a statutorily protected activity under either the direct or indirect method of proof. *Miller v. Polaris Labs., LLC*, 2014 WL 690805, *7-8 (S.D. Ind. 2014). She does not point to any evidence that she did so and, indeed, the evidence indicates that the filing of her EEOC Charge and her Amended EEOC Charge – which would be considered statutorily protected activities, *see Tate v. Orthopaedics-Indianapolis, P.C.*, 2014 WL 1091335, *7 (S.D. Ind. 2014) – took place *after* she was denied the Manager of Recovery/Resolution and Senior Regulatory Affairs Analyst positions. Accordingly, it cannot serve as the basis for a § 1981 retaliation claim and, in the absence of evidence that Ms. Murray engaged in a statutorily protected activity, her retaliation claim fails.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Golden Rule's Motion for Summary Judgment, [Filing No. 34]. Judgment will enter accordingly.

**Distribution via ECF only to all counsel of record**